UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MICHAEL J. MATTHEWS, JR.

        Plaintiff,

    v.

THE NEW JERSEY INSTITUTE OF
TECHNOLOGY, et al.,

        Defendants.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 09-2840
(JEI/JS)

**OPINION**

**APPEARANCES:**

LAW OFFICES OF RICHARD PRESS AND ASSOCIATES, L.L.C.
By:  Richard L. Press, Esq.
23 East Black Horse Pike
Pleasantville, New Jersey 08232
    Counsel for Plaintiff

RUDERMAN & GLICKMAN, ESQS.
By:  Steven Samuel Glickman, Esq.
675 Morris Avenue, Suite 100
Springfield, New Jersey 07081
    Counsel for City of Atlantic City, Donna Gaskill, Richard
    Sooy, Benjamin Fitzgerald, Domenic Cappella, and Gwen Lewis

**IRENAS**, Senior District Judge:

    Plaintiff Michael Matthews, Jr. initiated this poorly
drafted and factually muddled action against his employer, the
City of Atlantic City ("the City"), and several of its employees,
alleging a series of statutory and common law claims.[1]  Following
this Court's decisions pursuant to a Motion to Dismiss and Motion
to Amend the Complaint, and after Plaintiff's voluntary dismissal

---

    [1]  The Court has subject matter jurisdiction pursuant to 28
U.S.C. § 1331 and § 1367.

1

of certain claims against specific Defendants, the claims that
remain include violations of the Conscientious Employee
Protection Act ("CEPA"), N.J.S.A. 34:19-1 et. seq., the New
Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 et
seq., and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§
2601-2654.

All of the remaining Defendants[2] have now moved for summary
judgment, and in so doing, have made an effort in their brief to
precisely identify the various claims and legal theories
Plaintiff now asserts.

## I.

Plaintiff began his employment with the City in 1980 as a
mechanic, and from 1997 until 2001 was employed as a Data
Processing Programmer in the City's Management Information
Systems Department ("MIS").  (Pl's Stat. of Facts ¶ 1.)  In 2001,
Plaintiff was provisionally promoted to Senior Data Processing
Systems Programmer ("SDPSP").  (*See* Pl's Ex. 11.)

In early 2005, the City outsourced the work being performed

---

[2]  Unless otherwise noted, all references to "Defendants" in
this Opinion are to the moving Defendants, City of Atlantic City,
Donna Gaskill, Richard Sooy, Benjamin Fitzgerald, and Domenic
Cappella.
    Although the Summary Judgment Motion is also filed on behalf
of Gwen Lewis, the Amended Complaint does not state any claims
against her.  Moreover, in his Opposition Brief, Plaintiff states
that his claim "against Human Resources Director Gwen Lewis is
being voluntarily dismissed with prejudice."  (Pl's Opp. Br. at
59.)  Accordingly, Gwen Lewis is hereby dismissed as a party to
this action.

by MIS to the New Jersey Institute of Technology ("NJIT") and its
director Ernest Muro pursuant to several contracts.  (*See* Pl's
Exs. 12-19.)  Shortly thereafter, Plaintiff voiced objections to:

> the waste of City resources and money,. . . the
> [alleged] breaking of contracts by NJIT which
> resulted in double payments and litigation where
> the City had to buy out contracts already entered
> into with Gateway Computer Services and then
> having to pay Dell Computer Services, . . . the
> lack of oversight created within IT Department
> and . . . statements and comments made about
> [Plaintiff] by Mr. Ernest Muro.[3]

(Amended Compl. Count One ¶ 12.)

On April 28, 2005, Plaintiff met with Defendant Domenic
Cappella, Business Administrator, who informed him that he was
being transferred from MIS to the Radio Shop due to tensions
between Plaintiff and Muro.  (Defs' Stat. of Facts ¶ 23.)
Plaintiff was told that he would maintain his salary and his
provisional SDPSP title and would be able to utilize his talents
in a different department.  (Id.; *see also* Pl's Ex. 22(transcript

---

[3]  Plaintiff ultimately summarized his primary complaint
with NJIT and Muro as follows:
> [W]hen we went for quotes on computer equipment,
> Mr. Muro was submitting quotes from Dell.  I was
> submitting quotes from Gateway.  Gateway I know
> was on the State contract list.  Dell I would
> guess is on the State contract list.  I mean
> they're a big company.  We submitted quotes and
> every time we would submit a quote I found that,
> comparing the same specifications, that Gateway
> was coming under the dollar amount or, at worse
> case, matching it, but Mr. Muro would not allow
> Gateway to compete.
(Glickman Cert., Ex. 7(Pl's dep.) at 29:6-16.)

of meeting) at 13:10-23; 16:15-23; 45:15-17.)  Plaintiff agreed
to the transfer because he was not going to be able to work with
Muro.  (Pl's Ex. 20 (Pl's dep.) at 62:18-24.)

Plaintiff's transfer was effective June 8, 2005, and for
approximately eight months following his transfer, Plaintiff
maintained his salary and SDPSP title.[4]  (Defs' Stat. of Facts ¶
26; Pl's Ex. 25.)  However, on January 27, 2006, Plaintiff was
demoted from his provisional SDPSP title to his permanent Data
Processing Programmer title with a corresponding 11% salary
reduction.[5]  (See Pl's Ex. 26.)

According to Defendants, Plaintiff was demoted immediately
after Mayor Robert Levy took office, pursuant to the common
practice for an incoming administration to remove City employees

---

[4]  Sometime after the April 2005 meeting, a "Request for
Personnel Action" form was completed, requesting Plaintiff's
transfer from MIS to Public Safety/Communications.  This form
indicated that Plaintiff's title was "Sr Data Proc Sys Prog." and
the "Permanent" status was erroneously checked.  (See Pl's Ex.
25.)  Plaintiff apparently believed, based on the representations
made by Defendant Cappella and the transfer form, that he would
maintain his SDSPS salary throughout his employment at the Radio
Shop.  (Pl's Ctr. Stat. of Facts ¶¶ 20-21.)  However, both
parties agree that Plaintiff never held the SDPSP title in a
permanent capacity.  (Defs' Stat. of Facts ¶ 27; Pl's Resp. ¶
27.)

[5]  On March 10, 2006, Plaintiff filed a Union grievance
concerning his demotion in which he objected only to the amount
of the salary reduction.  (See Pl's Ex. 28.)  According to
Plaintiff, his salary should have been reduced by 6%, the amount
of the increase with the SDPSP title, but he alleged it was
improperly reduced by approximately 15%.  (Id.)

from their provisional titles.[6]  (*See* Defs' Stat. of Facts ¶¶ 28-29.)  Plaintiff, however, alleges that his transfer to the Radio Shop, along with the demotion and corresponding salary reduction, were in retaliation for the objections he voiced regarding NJIT and Muro.  (Pl's Br. in Opp. at 64-68; Amended Compl. Count One ¶ 9.)

Plaintiff also made complaints about dust particles in connection with the installation and wiring of a PA system, which began around March 2008.  (Defs' Stat. of Facts ¶¶ 47-48; Pl's Ex. 43.)  This project involved removing ceiling tiles and running wires between electronic equipment located throughout the building.  (Defs' Stat. of Facts ¶ 47.)  Shortly after beginning work on the PA project, Plaintiff, who allegedly suffers from asthma, began to have respiratory problems due to particles on the ceiling tiles.  (Id. ¶ 48; Pl's Stat. of Facts ¶ 35.)

Plaintiff expressed his health and safety concerns to his immediate supervisor, Defendant Richard Sooy, who gave him permission to contact the City Health Department.  (Defs' Stat. of Facts ¶ 48.)  Plaintiff spoke to Domenic Colella, a Registered Environmental Health Specialist in the Atlantic City Division of

---

[6]  Plaintiff does not dispute the existence of this practice, but rather maintains that he was "not part of this sweep of 'provisional titles'" because of the promise made during the April 28, 2005 meeting that he would maintain his salary. (Pl's Resp. to Defs' Stat. of Facts ¶ 28.)

Health, Environmental Health Unit ("ACDH-EHU").[7]  (Id. ¶ 49.)

According to Plaintiff, despite doctor's notes about his asthma, he was repeatedly assigned to the PA project and he was given no more than 28 days of a "light-duty" schedule.[8]  (Amended Compl. Count 2 ¶ 10, 13.)  In addition, City Communications Chief, Defendant Donna Gaskill, allegedly "refused to consider specific accommodations for Plaintiff in order to allow him to perform the work in a way which would not impact his own health."[9]  (Pl's Opp. Br. at 73.)

On April 7, 2009, the New Jersey Department of Labor and Workforce Development, Office of Public Employees' Occupational Safety and Health ("NJDLWD") conducted a scheduled inspection of the Radio Shop ("PEOSH inspection").  (Id. ¶ 58.)  The parties agree that Plaintiff's only involvement with the PEOSH inspection

---

[7] Following Plaintiff's complaint and similar complaints from other employees, ACDH-EHU suspended work on the project and initiated an investigation.  (Defs' Stat. of Facts ¶ 51.)  The investigation revealed that the ceiling tiles were free from asbestos and contained only mineral wool and cellulose.  (Id. at ¶ 52.)

[8] On May 12, 2008, Plaintiff submitted to Defendants a doctor's note stating that he was "not to return to ceiling work due to Pulmonary/Asthmatic condition."  (Pl's Ex. 50.)

[9] Plaintiff makes additional allegations against Defendant Gaskill that she selectively required Plaintiff to have a fitness for duty examination before returning to work on the PA installation project, that he was the sole target of a rule requiring seven days of notice before requested time off, and that she did not send a holiday gathering email to Plaintiff, but instead asked someone to pass it on to him.  (Amended Compl. Count 2 ¶¶ 9, 11; Pl's Stat. of Facts ¶ 36.)

6

was that he accompanied the inspector throughout the premises, as
directed by Defendant Sooy.  (Id. ¶¶ 59-60.)

On May 4, 2009, Plaintiff received a written reprimand for
failing to retrieve and properly store Radio Shop equipment from
City Hall as directed by Defendant Sooy.  (Defs' Stat. of Facts ¶
44.)

On October 14, 2009, Plaintiff submitted a discrimination
complaint to NJDLWD, alleging that the May 4, 2009 written
reprimand was in retaliation for his involvement with the PEOSH
inspection.  (Glickman Cert., Ex. 14.)  In his discrimination
complaint, Plaintiff explained:

> I mentioned [to a co-worker] that it was pretty
> ironic that within a week or two weeks (since the
> light covers had been missing) the inspection
> took place.  Sooy then remarked "yeah....ironic"
> in an accusing, sarcastic tone toward me.
>
> Then realizing that Sooy was obviously blaming me
> for the inspection, I reminded Sooy that the
> inspector had previously stated to Sooy and
> myself that other city facilities are also being
> inspected and not just the Radio Shop (trying to
> reason with Sooy that it wouldn't have been my
> doing that the Radio Shop was inspected since the
> Radio Shop was not the only place that had been
> inspected.
>
> Sooy responded that he had yet to find anybody
> else where the inspector was at.

(Id. at 8 of 9.)[10]

---

[10]  On January 13, 2010, NJDLWD concluded that the May 4,
2009 reprimand was in retaliation for Plaintiff's participation
in the inspection.  (Glickman Cert., Ex. 15 at 4 of 6.)  NJDLWD
based its finding on the allegations made by Plaintiff and the

In May 2010, following the expiration of the contracts between NJIT and the City, Plaintiff submitted applications for positions in the now de-privatized MIS which were allegedly ignored.[11]   (Amended Compl. Count One ¶ 12.)

---

fact that the City did not respond to refute Plaintiff's allegations.  (Id.)  The Order to Comply issued by the NJDLWD repeatedly notes the absence of evidence refuting Plaintiff's allegations.  (*See* id. at 4 of 6.)  The City did attempt to contest the NJDLWD finding by requesting a hearing, but its request was denied for being late.  (Defs' Stat. of Facts ¶ 66; Pl's Ex. 37.)

[11]   Plaintiff identifies several additional examples of retaliation and/or disparate treatment.  These include:

(1) allegedly "unwarranted and unnecessary disciplines" which include a July 2006 meeting in which Plaintiff's shortcomings were discussed (Pl's Stat. of Facts ¶¶ 24, 26), written records of Plaintiff's lateness on August 19, 2009 and September 17, 2009 (Id. ¶ 30), an October 30, 2009 3-day suspension for leaving work without permission, conduct unbecoming of a city employee and insubordination (Pl's Ex. 35), and a December 1, 2009 notice of minor discipline for which the form of discipline and the reason for it cannot be determined because the pages are not included as part of the record (Pl's Ex. 53);

(2) being the only Radio Shop employee required to keep a daily log of his work (Pl's Opp. Br. at 62);

(3) the fact that Plaintiff was never removed from the PA installation project (Id.);

(4) the City's alleged disregard of Plaintiff's FMLA request (Id.);

(5) Director of Emergency Management's requirement that Plaintiff provide a doctor's note each time he called out sick (Id.);

(6) the treatment of Plaintiff as a "pariah in the Radio Shop" and the fact that he was "given the worst assignments, criticized constantly and his competency is always questioned" (Pl's Stat. of Facts ¶ 25);

8

On March 4, 2009, Plaintiff filed a Complaint in this action in the Superior Court of New Jersey, Law Division, Atlantic County.  Defendants removed the case to this Court on April 30, 2009.

On March 23, 2010, this Court granted in part and denied in part NJIT and Muro's Motion to Dismiss.  On June 15, 2010 this Court granted Plaintiff's Motion to Amend the Complaint. Plaintiff filed an Amended Complaint on June 28, 2010 that did not include any claims against NJIT or Muro.  Subsequently, Plaintiff filed a stipulation of dismissal as to NJIT and Muro.

On October 15, 2010, the remaining Defendants filed the instant Motion for Summary Judgment.

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Celotex Corp. v.*

---

(7) requests for Internet access over a three year period that were ignored (Pl's Opp. Br. at 72-73);

(8) a "vindictive chain-of-command policy" pursuant to which Plaintiff was required to contact his immediate supervisor before contacting Defendant Gaskill (Pl's Stat. of Facts ¶ 34); and

(9) the City's failure to act on his November 2009 FMLA leave request. (Pl's Opp. Br. at 76-77.)

*Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party.  *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  "'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'"  *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323).  The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### III.

As previously noted, the Amended Complaint is not entirely clear as to the claims asserted, but it appears that Plaintiff alleges violations of CEPA, NJLAD, and FMLA.[12]

---

[12]  The Amended Complaint appears to also assert a violation of the state constitutional right to free speech based on the complaints Plaintiff made regarding Muro's management of MIS. (*See* Amended Compl. ¶ 12.)  However, Defendants have not specifically moved for summary judgment on this claim and Plaintiff has not defended this claim in his Opposition Brief or during oral argument.

To the extent that Plaintiff does in fact bring a constitutional claim for a violation of his right to free speech,

## A.   CEPA

CEPA prohibits employers from taking retaliatory action against any employee who reports, or threatens to report what the employee reasonably believes is an illegal activity in the workplace.  N.J.S.A. § 34:19-3(a).  CEPA also protects from retaliation an employee who objects to or refuses to participate in a policy or practice which the employee reasonably believes "is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment."  N.J.S.A. § 34:19-3(c).

To establish a prima facie case of retaliation under CEPA, a plaintiff must show that: (1) he reasonably believed that his employer's conduct was in violation of a law, rule, or regulation, or was contrary to a clear mandate of public policy; (2) the employee performed a whistleblowing activity as described

---

the Court finds any such claim meritless.  An employee's right to free speech is protected from interference by his employer only if the speech may be "fairly characterized as constituting speech on a matter of public concern" that "relate[s] to any matter of political, social, or other concern to the community."  *Karins v. City of Atlantic City*, 152 N.J. 532, 549 (1998)(quoting *Connick v. Myers*, 461 U.S. 138, 146 (1993)).  When the employee's speech cannot be so characterized, "government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment."  *Id.; see also Reilly v. City of Atlantic City,* 532 F.3d 216, 226 (3d Cir. 2008).  Plaintiff's comments about Muro's management of MIS cannot be deemed speech on a matter of public concern.  Thus, Defendants' right to ensure the efficient functioning of their facility and employees overrides any right Plaintiff had to make the comments he did.

in N.J.S.A. § 34:19-3; (3) his employer took an adverse employment action against him; and (4) a causal connection exists between the plaintiff's whistleblowing activity and the adverse employment action. *Maimone v. Atlantic City*, 188 N.J. 221, 230 (2006); *Caver v. City of Trenton*, 420 F.3d 243, 254 (3d Cir. 2005).

During oral argument, Plaintiff clarified that he is bringing a hostile work environment CEPA claim based on: (1) the alleged belief by Defendant Sooy that Plaintiff requested the PEOSH inspection of the Radio Shop; and (2) Plaintiff's health and safety complaints made in connection with the PA installation project.[13]   The Court will consider each of these alleged protected activities in turn.[14]

**1.**

The alleged belief by Defendant Sooy that Plaintiff

---

[13]   In *Green v. Jersey City Bd. of Ed.*, the New Jersey Supreme Court held that where there is a continued pattern of retaliatory conduct by the employer, the CEPA one-year statute of limitations begins to run from the last retaliatory act.   177 N.J. 434, 448 (2003).   Plaintiff relies on this "continuous violation doctrine" to seek redress for retaliatory conduct that would otherwise fall outside of the statutory time period on the basis that Defendants have engaged in continuous activity constituting a hostile work environment.

[14]   In his written filings with this Court, Plaintiff appeared to also assert a CEPA claim based on complaints he made with respect to the management of MIS.   However, during oral argument, Plaintiff clarified that this was merely background information and was not intended to be a separate basis for a CEPA claim.

requested the PEOSH inspection cannot be the basis of a CEPA claim because it does not constitute whistle-blower activity under the statute.[15]

CEPA requires that Plaintiff show that he disclosed, threatened to disclose, objected to or refused to participate in an activity, policy or practice that the employee reasonably believed was illegal or contrary to public policy. *See* N.J.S.A. § 34:19-3. Here, Plaintiff testified that he "did not have anything to do with the inspection occurring" and he does not allege that he performed any whistleblowing activity at all in connection with the PEOSH inspection. (Glickman Cert., Ex. 7 at 53:3-56:24.) Plaintiff's only involvement with the inspection was to walk the inspector through the premises, as instructed by Defendant Sooy. This does not constitute whistleblower activity.

Since Plaintiff has not alleged that he disclosed, threatened to disclose, objected to or refused to participate in an activity, policy or practice he believed was illegal or unethical, summary judgment will be granted to Defendants on this claim.[16]

---

[15] Moreover, the Court finds insufficient evidence beyond Plaintiff's unsubstantiated allegations to support a reasonable inference that Defendant Sooy actually believed that Plaintiff requested the inspection.

[16] The parties argue in their briefs whether the Court should consider the NJDLWD's conclusion that the City through Sooy "discriminated against [Plaintiff] by serving him a written reprimand that was applied to his personnel file for the

13

**2.**

Plaintiff's next asserted basis for a CEPA claim concerns complaints about potentially harmful particles in the ceiling tiles that he made to Defendant Sooy, Defendant Gaskill, and the City Health Department in connection with the PA installation project.  Plaintiff claims that he was retaliated against when his 2010 applications for employment with MIS as a Management Information Systems Specialist, Senior Technician, Principal Technician, Network Administrator, and Director of Data Processing were allegedly ignored.[17]  (*See* Amended Compl. ¶ 12; Pl's Ex. 4.)

Defendants move for summary judgment arguing that Plaintiff did not perform whistleblower activity and that he has not proven that he suffered an adverse employment action as a result of his complaints.

---

protected activity of participating in a planned PEOSH safety inspection at the Atlantic City Police Department radio shop." (Pl's Ex. 37 at 4; *see supra* note 10 and accompanying text.) Although the Court declines to exclude the report from evidence for the purposes of this motion, the Court notes that the NJDLWD finding, which simply accepts as true Plaintiff's allegations, is at odds with the summary judgment standard, which requires Plaintiff to support his allegations with evidence.  *See supra* Section II.  Therefore, the Court gives the NJDLWD finding of retaliation little weight for the purposes of deciding the present motion for summary judgment.

[17]   Business Administrator Michael Scott testified that he had no knowledge that Plaintiff applied for any of the open positions and did not know whether anyone even reviewed his applications.  (*See* Glickman Cert. Ex. 9 at 96:17-97:23.)

The evidence supports a finding that Plaintiff reasonably believed that the PA installation project exposed employees to asbestos or other potentially harmful particles, in violation of law and public policy.[18]  (*See* Pl's Ex. 41 March 11, 2008 Memo.) Plaintiff reported his concerns to Defendant Sooy, Defendant Gaskill, and the City Health Department, which constitutes whistleblowing activity.[19]  In addition, the fact that Plaintiff's applications for employment in the deprivatized MIS department were ignored suggests a failure to promote, which is recognized by New Jersey courts as an adverse employment action. *See Regan v. City of New Brunswick*, 305 N.J. Super. 342 (App. Div. 1997), *partially abrogated on other grounds, Dzowonar v. McDevitt*, 177 N.J. 451 (2003).  Finally, the evidence supports a causal connection because of Defendants' awareness of Plaintiff's

_____

[18]  In the New Jersey Public Employees' Occupational Safety and Health Act, N.J.S.A. § 34:6A-25 et seq., the legislature specifically declared "that it is the policy of this State to ensure that all public employees be provided with safe and healthful work environments free from recognized hazards." N.J.S.A. § 34:6A-26.

[19]  To the extent that Defendants contend that Plaintiff's complaints were not whistleblowing activity because they were not made to an external regulatory agency, the Court disagrees.  The text of the statute protects an employee who makes complaints "to a supervisor or to a public body."  N.J.S.A. § 34:19-3; *see also Klein v. University of Medicine and Dentistry of New Jersey*, 377 N.J. Super 28, 41 (App. Div. 2005).  A supervisor is defined as "any individual with an employer's organization who has the authority to direct and control the work performance of the affected employee, who has authority to take corrective action regarding the violation of the law, rule or regulation of which the employee complains...."  § 34:19-2.

complaints and filing of the instant action coupled with the close proximity of time between Plaintiff's protected activity and Defendant's apparent failure to consider his employment applications.

Viewing the evidence in the light most favorable to Plaintiff, there is a genuine issue of material fact as to whether Plaintiff was passed over for employment in MIS because of his whistleblower activity. Accordingly, Defendants' Motion for Summary Judgment will be denied on this claim.

### B. NJLAD

The NJLAD prohibits employment discrimination on the basis of a disability "unless the nature and extent of the disability reasonably precludes the performance of the particular employment." N.J.S.A. § 10:5-4.1.

Plaintiff clarified at oral argument that his NJLAD claim is based on Defendants' alleged failure to engage in the interactive process to determine the need and availability of a reasonable accommodation for Plaintiff's asthma. Defendants argue that they are entitled to summary judgment because Plaintiff is not disabled within the meaning of the NJLAD and that they did not violate the NJLAD.[20]

---

[20] It is unclear whether asthma is a disability within the meaning of the NJLAD. *See Liebeskind v. Colgate-Palmolive Co.*, 2010 WL 2557765, at *1 (N.J. Super. App. Div. June 11, 2010). However, given the broad remedial sweep of the NJLAD, *see Victor v. State*, 203 N.J. 383, 420-21 (2010), the Court will assume for

16

To establish that an employer failed to participate in the interactive process, an employee must prove that: "(1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Victor v. State*, 401 N.J. Super. 596, 613 (App. Div. 2008).

Here the evidence establishes that Defendants were aware of Plaintiff's asthma[21] and that Plaintiff requested reasonable accommodations in the form of protective gear and time off from the PA installation project and from work generally.[22]  The record is unclear as to whether Plaintiff ever received the protective gear he requested, and there is evidence that Defendants questioned the legitimacy of Plaintiff's accommodation requests and sought to discipline him for an alleged chain of command violation stemming from them.  *(See* Pl's Ex. 44 (email

---

the purposes of the instant motion that asthma is a disability covered by the NJLAD.  In addition, the Court finds that Plaintiff has adduced sufficient medical evidence to establish that he in fact suffers from asthma.  (*See* Pl's Exs. 50, 52.)

[21]   *See supra* note 8 and Pl's Ex. 34, letter dated 14 August 09.

[22]   *See* Pl's Ex. 41 (memo dated March 11, 2008); Ex. 45 (memos dated March 13, 2008); and Ex. 52 (Nov. 4, 2009 FMLA certification).

dated March 10, 2008)).  In addition, it appears that Defendants made it difficult for Plaintiff to take time off and never acted on his November 4, 2009 FMLA request.  (*See* Glickman Cert. Ex. 7 at 50:14-51:15).

Viewed in the light most favorable to Plaintiff, the Court finds that there is a question of material fact regarding whether Defendants made a good faith effort to assist Plaintiff in seeking accommodations for his asthma.  Accordingly, Defendants' Motion for Summary Judgment will be denied with respect to Plaintiff's NJLAD claim for failure to engage in the interactive process.[23]

### C.  FMLA

The FMLA protects an employee's right to family and medical leave from his job.[24]  29 U.S.C. § 2612; *Sarnowski v. Air Brooke*

---

[23]  Plaintiff also argues that the City's 28 day light duty policy is a per se violation of the NJLAD and FMLA, which mandate that an employee's ability to perform a job be assessed on an individual basis.  However, this mandate does not preclude employers from establishing general policies for light duty.  *See Raspa v. Office of Sheriff of County of Gloucester*, 191 N.J. 323, 340 (2007)(holding that employers may place limits on light duty assignments without running afoul of the NJLAD).  Accordingly, summary judgment is granted to Defendants on this claim.

[24]  An employer covered by the FMLA must employ "50 or more employees for each working day during each of 30 or more calendar workweeks in the current or preceding calendar year."  29 U.S.C. § 2611(4)(A)(i).  An employee is eligible for FMLA leave if he has worked "at least 1,250 hours of service with his employer during the previous 12 month period."  29 U.S.C. § 2611(2)(A).  There is no dispute that Plaintiff is an FMLA eligible employee or that the City is an employer under the FMLA.

*Limousine, Inc.*, 510 F.3d 398, 401-02 (3d Cir. 2007).  A cause of action exists where an employer interferes with an employee's exercise of FMLA rights.  *See* 29 U.S.C. § 2615(a)(1); *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005). Interference with an employee's rights includes an employer's failure to advise the employee of his rights under the FMLA. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 142-43 (3d Cir. 2004).  Under the interference theory, "the employee need not show that he was treated differently than others [and] the employer cannot justify its actions by establishing a legitimate business purpose for its decision."  *Callison*, 430 F.3d at 119-20.

Plaintiff's interference claim is based on (1) Defendants' alleged failure to advise Plaintiff of his FMLA rights, (2) the requirement that Plaintiff obtain a medical certification and fitness for duty exam, and (3) the alleged denial of Plaintiff's FMLA leave.  (Pl's Opp. Br. at 76-77.)  The Court will consider each of these claims in turn.

**1.**

Plaintiff claims that Defendants failed to advise him of his rights under the FMLA.[25]

---

[25]  As an initial matter, it appears that Plaintiff would be eligible for FMLA leave based on his asthma, which is a chronic serious health condition causing episodic periods of incapacity. *See* 29 C.F.R. § 825.115(c); *see also* Pl's Ex. 50 and 52.

19

To prevail on an interference claim based on a failure to advise, the employee must show prejudice by "establish[ing] that this failure to advise rendered him unable to exercise that right in a meaningful way, thereby causing injury." *Conoshenti,* 364 F.3d at 143.  When the plaintiff has not presented any evidence that he could have made a different choice had the company informed him of his FMLA rights, he has not made a showing of prejudice.  *Id.* at 145.

Here, Plaintiff's claim fails for two reasons.  First, the record demonstrates that Plaintiff was advised of his FMLA rights.  Plaintiff testified in his deposition that employees in the Human Resources Department explained to him the procedure for applying for FMLA leave sometime in 2009, and that prior to that time, he had never sought FMLA leave.  (Glickman Cert., Ex. 7 at 49:11-51:14.)

Second, assuming Plaintiff was unaware of his FMLA rights in 2008, he has not met his burden of showing prejudice.  There is no evidence that Plaintiff would have done anything differently had he been informed of his FMLA rights in 2008.  The evidence demonstrates that Plaintiff took paid leave for occasional doctor's visits in 2008.[26]  There is no evidence to support an

---

[26]  In a memo dated June 17, 2009, Plaintiff explained that his pay was initially docked for the time he was out of work seeking medical treatment, but that the error was corrected and his pay was restored.  (Pl's Ex. 33 June 17, 2009 Memo at 6.) *See also* 29 U.S.C. § 2612(d)(2)(A) ("An eligible employee may

inference that Plaintiff sought in 2008 any leave in addition to what he took or that any additional leave was medically necessary.

Accordingly, summary judgment will be granted to Defendants on Plaintiff's FMLA interference claim for failure to advise.

**2.**

Plaintiff's next claim is that Defendants interfered with his FMLA rights by requiring him to obtain a medical certification and a fitness for duty exam.

First, requiring a medical certification is expressly permitted by the FMLA. *See* 29 C.F.R. § 825.305(a).

Second, Plaintiff has not presented evidence of any injury resulting from the fitness for duty exam or the medical certification, and courts have refused to recognize an FMLA interference claim in the absence of any injury. *Lynch v. Matthews Int'l*, 2010 WL 2640597, at *6 (W.D.Pa. June 29, 2010). The "mere violation of a right created by the Act is not in itself actionable and nominal damages are therefore not available." *Hayduk v. City of Johnstown*, 580 F.Supp. 2d 429, 482-83 (W.D.Pa. 2008)(citing *Conoshenti*, 364 F.3d at 143). There is no evidence to support a conclusion that plaintiff forfeited any of his FMLA rights or lost any wages, salary,

---

elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave or family leave of the employee for leave provided" pursuant to the FMLA.).

employment benefits or other compensation as a result of the
fitness for duty exam or the medical certification.[27]

Accordingly, summary judgment will be granted to Defendants
on this claim.

**3.**

Finally, Plaintiff claims that Defendants interfered with
his FMLA rights when they failed to take any action on
Plaintiff's November 2009 request for FMLA leave.

To prove an FMLA interference claim, "the employee only
needs to show that he was entitled to benefits under the FMLA and
that he was denied them." *Sommer v. The Vanguard Group*, 461 F.3d
397, 399 (3d Cir. 2006).  Interference includes "not only
refusing to authorize FMLA leave, but discouraging an employee
from using such leave."  29 C.F.R. § 825.220(b).

Pursuant to the FMLA and related regulations, "when an
employee provides notice of the need for FMLA leave, the employer
shall provide the employee with notice detailing the specific
expectations and obligations of the employee and explaining any
consequences of a failure to meet these obligations."  29 C.F.R.
§ 825.301(b)(1).  An employer interferes with the exercise of

---

[27]  Damages for an FMLA claim include compensatory damages
for any wages, salary, employment benefits or other compensation
lost because of the violation and liquidated damages.  29 U.S.C.
§ 2617(a)(1).  Section 2617(a)(1)(B) authorizes "such equitable
relief as may be appropriate, including employment,
reinstatement, and promotion."

FMLA rights if it fails to provide the employee who gives notice of the need for FMLA leave written notice detailing the specific expectations and obligations and resulting consequences.  *See* 29 U.S.C. § 2615(a)(1); *Parker v. Hahnemann Univ. Hosp.*, 234 F.Supp.2d 478, 483 (D.N.J. 2002).

Here, Plaintiff sought FMLA leave for his asthma in November 2009 by completing a FMLA certification and submitting forms to the City.  *See supra* note 24; Pl's Ex. 52 (FMLA Certification); Glickman Cert. Ex. 7 at 50:14-51:15.  Viewed in the light most favorable to Plaintiff, the evidence demonstrates that Plaintiff provided notice to Defendants that he was seeking FMLA leave and they failed to take any action on Plaintiff's request.  Plaintiff has thus created a genuine issue of material fact as to whether Defendants, in failing to act on Plaintiff's FMLA request, interfered with his rights.  Accordingly, Defendants' Motion for Summary Judgment will be denied on this claim.

## IV.

For the reasons stated above, Defendants' Motion for Summary Judgment will be granted in part and denied in part.  Defendants' Motion will be denied with respect to Plaintiff's (1) CEPA claim based on complaints made in connection with the PA project, (2) NJLAD claim based on Defendants' failure to engage in the interactive process, and (3) FMLA interference claim based on

23

Defendants' failure to act on Plaintiff's November 2009 FMLA request.  An appropriate Order accompanies this Opinion.


Dated: February __24__, 2011


                              _____s/Joseph E. Irenas_____
                              **JOSEPH E. IRENAS, S.U.S.D.J.**